Thank you, Mr. Chief Justice, and may it please the Court. Like many cases, this case should be resolved by the text. And here, the text is in Rule 10b-5, as adopted by the Congress in the PSLRA. That text makes clear that an omission is actionable in just one circumstance. When the omitted fact is material and necessary to make a statement not misleading. Today, you're going to hear arguments for omission liability in a different circumstance. When the omitted fact is material and required to be stated by Item 303. None of those arguments is rooted in the text. The text doesn't permit eliding the statement requirement by treating the entire management narrative as misleading if one thing is left out. The PSLRA shows that Congress had something far more specific in mind by the word statement. The text also doesn't permit recasting a claim about what a 10-K does or doesn't say as a claim involving a fraudulent scheme or act. Whenever this Court has recognized liability under Rule 10b-5a or c, the case has involved something more or different than speech alone. And this is all in the context of the judicially implied private right of action, which this Court is loathe to expand. No circuit, either before or after the PSLRA, has approached 10b-5 liability in the ways that Moab and the government are seeking here. Now, to be clear, no one is  Moab has extensive powers to penalize an omission that violates Item 303. But without the element of a misleading statement, an omission can't be the subject of a private class action. I'm happy to take the Court's questions. Can a compliance certification statement be made misleading by an omission? I'm arguing that a compliance statement itself is a misleading statement. The government's argument is that a compliance statement makes the narrative as a whole the misleading statement. As for the compliance certification itself, though, Your Honor, that statement wouldn't be actionable under the federal securities laws because, first of all, it would be a statement of opinion. And secondly, to the extent that it is relating to an item of future import, it would be protected by the forward-looking, the bar on claims against forward-looking statements by the State of Harvard. Are there any specific arguments with respect to 906? I think that question was related to 906 and the certification there. There, the, Moab is making an argument based on 906, Your Honor. I'll note that the Second Circuit did not rely on 906, a 906 certification. The 906 certification wasn't mentioned in the complaint, in the briefs below, or in the brief in opposition. So we don't think it's really... And that certification is not a part of the 303 filing, is it? It is not. It is a separate document from the securities filings themselves. And, of course, the requirement for a 906 certification does not appear in the securities laws. It appears in the criminal code. And this Court is loathe to interpret a civil remedy from something in the criminal code unless Congress specifically stated so. So, in this case, we don't need to reach that issue. I think that's correct, Your Honor. Counsel, the distinction you draw between half-truths and omissions strikes me as one that might be hard to apply in practice. Let's say you have a statement that, you know, our sales are going to rise because of the new processors we're going to bring online. But what you don't say is that our sales are going to fall because EPA is going to issue new regulations, you know, something like along those lines that you know, and they're going to limit further the use of No. 6 oil. Now, is that an omission case because, you know, there's a difference between new processors increasing sales and EPA regulation lowering it, or is it a half-truth situation because the first part says our sales will rise? Your Honor, that's a kind of question that district courts answer every day in securities cases. In every instance where a plaintiff identifies a statement and identifies it as a half-truth, the Court is then tasked with answering a lot of questions about that statement. Does it match the omitted fact? Is it close enough in topic given the context of the statement? Well, what's the answer in the hypothetical that I gave? I think the answer to that question, Your Honor, would be no. And that's because the statement needs to be something like and kind in both subject matter and specificity. And so the classic example that this Court has discussed in Escobar is taken from Justice Sotomayor. If the third also exists but is omitted, then the statement about the two streets might be misleading by omission. But where do you get that from the text? I mean, I understand how you get your principal argument from the text. But there I understood you to be saying that there are limits on the ways in which an omission can make statements in the MD&A or in the broader form misleading. And I don't see anything like that in the text. Well, what the text tells us, Your Honor, is the text makes it unlawful to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made not misleading. And courts have interpreted that text to require a similarity in both subject matter and specificity between the statement rendered misleading and the omitted fact. And that's how courts typically... Well, I mean, I guess this is along the same lines as the Chief Justice's question. If you have a set of paragraphs or a set of sentences, what have you, which paints a very rosy picture of the prospects of a company, and then it turns out that you've omitted the thing that is actually going to crater the company next month, that rosy picture seems to be rendered misleading. But I understood your answer to the Chief Justice to say that you did not agree with that. Is that right? So I think the first question is, if there is a statement that the complaint identifies... And when you say, if there is a statement, I mean, it's actually framed in the plural in the text, so it's statements. Are you saying that there has to be one discrete statement? And where does that come from? It comes from the PSLRA, Your Honor. So the PSLRA requires that each statement must be specifically identified in the complaint. So the PSLRA took that plural language, the plural language in Rule 10b-5, and it described what is the pleading requirement for that statement in the context of a claim based on an omission that makes statements made to have been misleading. So again, go back to my hypothetical, and it's a big paragraph that just says this company has a bright future ahead of it for the following 19 reasons, and then it doesn't tell you the thing that's going to crater the company next week. How does your analysis apply to that? I think the analysis would change. The result would be the same, and let me explain why. I think in that instance, there might very well be a statement that satisfies the statement element of the omission claim, provided that it was identified in the complaint. But this is why the specificity is so important. Once that specific statement, that paragraph with the rosy future and so on, is identified in the complaint, then the defendant has the opportunity to move to dismiss the case. It might, for example, in that instance, invoke the safe harbor for forward-looking statements. It might also invoke this Court's ruling in Omnicare, which identifies statements of opinion as being different from statements of fact. Now, of course, a statement of opinion can be misleading, but that requires a very special kind of omitted fact that the Court was very clear about in the Omnicare decision. So the statement requirements, which are very important here, especially because that's the moment when Congress finally weighed in on the judicially implied private right of action. But the statement requirement is also important because of all the things that flow from it, all of the other elements and safeguards that use the statement as their predicate. And to have, as the government argues, the statement be the entire narrative, which here was pages and pages and pages on many different topics with respect to multiple different subsidiaries of a holding company. That kind of statement isn't what the Congress had in mind when it used the word statement in the BNR Act. Ms. Koberle, can I ask you what I think is a variation on this theme? Is the rule that you're asking for pretty narrow because the Chief and Justice Kagan are pointing out that it can sometimes be difficult to tell when an omission causes a statement or statements in the disclosure to be misleading? So Professor Grunfest suggests that most omission cases can pretty easily be repleted as misleading statement cases. Do you agree that that's going to be true of some significant portion of these, meaning that the rule that you're asking for is fairly narrow? Yes, I do agree with that, Your Honor. And so, first of all, I think it's important to remember how we got here. The Second Circuit held that a violation of Item 303 is actionable independent of whether there's a misleading statement. And we think that rule is incorrect and needs to be vacated. Now, as far as what the status quo will be going forward, and it is what the law is in every other circuit right now, a plaintiff must identify a specific statement. If that happens, then, of course, the statement requirement is satisfied and we move on to the other elements. So all we're seeking here is respect for the text of 10b, which says that an omission is actionable only when the omitted fact is necessary to make the other statements made not misleading. And so we're simply asking for what Congress asked for, which is that the complaint identify a misleading statement. Are you hoping, I'm sorry, I thought the Second Circuit in the alternative had held that there were half-truths here. And so, why are we here? If you're going to lose anyway when you go down, back down. Well, respectfully, we don't think we're going to lose when we go back down. I know you won on this issue on the district court. Indeed. So the specific half-truths that the Second Circuit identified don't have to do with the Item 303 omission. So the paragraphs in the complaint that described the Item 303 omission simply referred to Item 303 and did not tie that failure to comply with any specific statement. Was this thought about in the Second Circuit? So did you make this argument in the Second Circuit? I mean, obviously, we can just, if we were to rule in your favor, not to suggest we are, but just to say that, we would vacate and remand and let the Second Circuit apply the correct rule, correct? Yes. But the two statements, they were two very specific statements that the court found had been adequately pleaded as half-truths. And both of those statements, first of all, were in oral discussions. They were not in pleadings. They were not in filings with the SEC. So Item 303 didn't apply to them at all. They were statements made orally by management in conferences with investors. And the court held that both of those statements were rendered misleading by, and this is how the Moab had argued it, by the omission of specific facts relating to the base of customers. So they're statements about, factually, who are our customers. And the allegation was that those statements were misleading because there was information about those customers, factual information, that had been omitted. So that's the very narrow omission claim, half-truth claim, that the Second Circuit allowed to proceed. And that claim, by the way, is proceeding today in the district court. The claim that's before the court today is a much broader claim. It's a claim that the holding company should have disclosed not just the existence of IMO 2020, not the fact that it, the alleged fact that it didn't comply with Item 303, but very specifically the idea, the prediction that there was a significant negative impact on the performance of one of the subsidiaries and that that impact would cause the holding company to cut its dividend, which is ultimately the news that the plaintiffs allege led to the decrease in the stock price. Thank you, counsel. And I suppose that you can argue, you know, with many different parts of that argument. You're going to claim that they're wrong about the way in which the omission had an impact. But I guess they're also arguing that you're seeking blanket immunity for omissions in the Item 303 context. Are you? We are not, Your Honor. So you agree that Item 303 omissions could give rise to the kind of liability that they say exists here? No. And I want to draw a distinction between immunity and 10b-5. So we think that a failure to comply with Item 303 is not actionable unless it's tied to a specific misleading statement that's pleaded in the complaint, in which case the Item 303 requirement is not doing very much work. But can that statement be of the nature that the SG points out? So you have a list. You know, the company does comply partially. It talks about various trends, et cetera. But it leaves out a few that seem to be pretty consequential if investors knew about them. Is that the kind of scenario that you say could possibly give rise to liability here but it just wasn't pled in this situation? Well, first of all, in that instance, I'm not sure Item 303 is doing very much work. So we already have the classic example, again, from Justice Cardozo in Junia's construction, of the two roads and the one road. So the analogy here would be if the complaint had identified a specific statement of certain forward-looking trends that were going to have an impact and it left out this forward-looking trend that was going to have an impact, the plaintiff might be able to plead the statement requirement by identifying that specific statement. Now, that didn't happen here. But that would be a pleading that might satisfy the statement. On the immunity word, I thought your response would be that the SEC has authority to enforce omissions in 303. That is my response. With respect to the question about immunity for 10B liability, even there we're not seeking immunity exactly. We're simply saying that you have to identify a statement that's something that's like and kind. But your Honor is quite right that the SEC has ample authority to pursue and penalize failures to violate or failures to comply with that agreement. Just to be clear, I guess I'm just trying to understand, are you making the argument that there's something about the nature of an Item 303 disclosure that it can't give rise to liability, or there are circumstances that you can envision, like the one perhaps you identified, where it might, but they didn't allege that in this case? We are not asking this Court to make a ruling based on the nature of Item 303 representations. What we're asking the Court to do is respect the text of Rule 10b-5b. If a plaintiff identifies a specific misleading statement in an Item 303 disclosure, that happens to be in an Item 303 disclosure, which means, by the way, it happens to be anywhere in the MD&A of the public filing, then the plaintiff could plead that specific statement as a misleading statement for purposes of this case. But just to make sure, I was just going to say, I thought you argued that the private actions could not be brought under Section 303 alone, even though the Commission might be able to take actions. We do argue that, Your Honor, but the problem here is to identify what the Second Circuit held was that a violation of Item 303 standing alone is actionable under Rule 10b-5b, whether or not there was a misleading statement. And so what we're asking for is for the Court to require the misleading statement. The statement has to be identified and it has to be something specific to comply with the PSLRA pleading requirements, and then the defendant will go through the process and the Court of evaluating whether that kind of statement is the sort of thing on which securities liability can rest. And just to make sure I understand your answer to Justice Jackson's hypothetical, if in the you the investor should know about when you think about our future sales, and it lists three trends, but it doesn't list a fourth that's actually much more consequential than those three and cuts in the opposite direction. Has that satisfied the requirement? I think that would satisfy the requirement of the misleading statement. Yeah. It remains, then there are other pleading requirements as well, including potentially the application of the safe harbor, because I actually think that statement that Your Honor is positing probably is a forward-looking statement that would be protected from liability under the statutory safe harbor. But in terms of the issue that we're deciding today, it would pass that? I think it likely would pass that, Your Honor. And that's why it's so important that the statement be specific and identified. There's actually the safe harbor provision itself contains an important textual clue as well. It discusses statements as being something contained in the filings, contained in, in fact, specifically contained in the management's discussion and analysis, which, of course, is a lengthy narrative. Based on that understanding of what a statement is, it's not appropriate to suggest, as the government does, that the statements made could be, in general, the entire MD&A. And one of the reasons it's important for the PSLRA, I think, to identify something more specific is because the MD&A is long and complex and covers many different subjects. Our client, for example, was a holding company that had four different major subsidiaries engaged in different businesses. It was affected by many regulations. It, in fact, disclosed in its MD&A the possibility that regulations that impact the commodities stored by this subsidiary could impact the outcome, the financial results of the holding company. That was actually disclosed at a higher level of generality. That did not become misleading simply because it did not provide a specific example that included this alleged regulation. And we, we want companies to disclose what's required under item 303. We want them to provide that information. But if we have a rule that says any time you say anything, you can be held liable for what you don't say, that would have exactly the opposite result. MS. COBERLEY, what about 10B5A and C? Would a 303 omission be actionable under either of those subsections? And are you asking us to say anything about that? We are not asking the court to say anything about that necessarily because the Second Circuit didn't. So we did not brief that issue as if it was before the court. The Second Circuit did not rely on that. But what I can say, Your Honor, is that every time this court has recognized liability under A and C, it has found something in addition to speech alone. And if it were the case that you could, this, in our case, is a quintessential B case, right? It's about what a 10K or a 10Q does or doesn't say. And if that case could be recast as a scheme case or an act case and avoid the specific requirements of B, no one would ever bring a claim under B. And presumably there would be some decision by some court of appeals somewhere that held that a misrepresentation or omission in a 10K or a 10Q can be asserted under A and C. And no court, including the Second Circuit, has ever reached that result as far as we are aware. Thank you, Counsel. Justice Thomas? Justice Gorsuch? Justice Barron? Thank you, Counsel. Mr. Frederick? Thank you, Mr. Chief Justice, and may it please the Court. This case involves a classic 10B, 105B, misleading half-truth. Petitioners disclosed a few known trends that would affect their bottom line but omitted the IMO 2020 uncertainty that would decimate 40 percent of their revenue. Justice disclosing two roads near a property when a third one actually bisects it is a classic fraudulent half-truth, so is a partial item 303 disclosure that omits required material information. A reasonable investor would expect the description of known trends to be complete and would be misled by such a material omission. If accepted, petitioners' argument would create a road map for fraud. Petitioners knew they were about to lose a substantial part of their business but kept their stock price artificially inflated by deliberately withholding information about their readiness to comply with an important rule change. When the truth emerged, their stock price fell by more than 40 percent in one day. Congress enshrined a private right of action to redress this kind of half-truth. Now, petitioners concede that an omission can be a half-truth when there is a statement on the same subject, but item 303 defines the relevant subject, any known trends or uncertainties that are reasonably likely to significantly affect revenues or income. So if a company, as Mr. Chief Justice, your hypothetical pointed out, discloses that sales are going to go up by some customers, but suppose that the supplier of parts is about to go into bankruptcy, both of those statements go to the same subject under item 303. But an omission of one, the bankruptcy of the supplier, would materially affect the bottom line. For the reason that they don't give you a standard for determining the same subject, it has to be tied to item 303. I welcome the Court's questions. But even if you lose, doesn't the SEC have authority over the omission? Not under 10b-5b under their theory. The SEC would only have administrative authority through their corporate finance department, but they wouldn't have the authority to bring a fraud claim that would seek other potential remedies. And the SEC has made quite clear that its enforcement staff is meager compared to the resources and opportunities for institutional investors like the ones that I represent to be able to bring private actions. And so which omissions would not be misleading? Well, omissions If pure omissions are misleading, it seems as though you're saying the mere fact that it is an omission makes it misleading. Can you, is there a limit to that? Yes, there is, Justice Thomas. And what the Second Circuit did below was it went through essentially a decision tree whether there was a violation of item 303. It asked first, is there a known trend? Would it reasonably affect the bottom line? If the answer to that is no, then any omission that would not concern a known trend wouldn't be required for disclosure. And if there was an uncertainty about that, then the managers are asked whether or not disclosing that event would be reasonably likely to occur, which is a lower standard still. The Second Circuit provided those kind of prophylactic protections through the decision tree that it undertook to determine whether or not an omission in these particular contexts would be important. And it determined, and this isn't challenged on appeal, that it was objectively unreasonable for the company not to put in their item 303 disclosure the facts that would be necessary to determine the company's readiness to deal with the IMO 2020 rule change, which is going to decimate the six-oil market. And so for that reason, it seems very clear to us that when the managers are assessing what needs to be in the item 303 disclosure, omitting something that would be so material as was the case here would be independently actionable. And I would point out that the omission that was put in the item 303 disclosure, and this is something on appeal here, is called Strat McClure. That was the precedent on which the procurium panel below relied. Strat McClure said that omissions that were of such materiality would lead the financial statements to be misleading. We think what it meant by that was the MD&A part. And the comment is made that, well, the MD&A is many pages. Well, the statement in a Supreme Court brief can be many, many pages. And so the fact that we're not talking about one sentence, but we're talking about a statement, is relevant for determining what material information reasonable investors would want to have. Can I just... Counsel. Go ahead. You began by saying this was a classic half-truth. Yes.  And the distinction between half-truths and pure omissions. Are you giving up on that distinction? Or you don't buy it? I mean, you do not buy that distinction at all. I think what they define pure omission to be is a violation of a disclosure rule. And if you look at a disclosure violation, you have to look at what was disclosed compared to what wasn't disclosed. And that's the classic half-truth that your very first hypothetical, Mr. Chief Justice, brought to light. And we think here where the company is talking about some of the material trends that would affect their bottom line, but not the trend that's going to affect nearly half of their business, is clearly a material trend and a material omission that renders the statements that they've made elsewhere in the item 303 disclosure to be misleading. And you would have to identify those specific statements? Well, there are two answers, Justice Barrett. And I want to be clear for the record what our position is. We agree with the SG that the categorical matter, the statement is the MD&A. So that is an adequate statement if referenced in the complaint, which we have on paragraphs 277 and 278 of our complaint. If, however, the Court were to conclude that more particularized statements within the MD&A needed to be identified, we've also done that in the complaint in the preceding six or seven paragraphs. And so whichever way the Court rules, if it accepts the Solicitor General's more categorical approach or if it takes the more nuanced approach that we have also offered as an alternative, we think that you get to the same place. But if I understand you correctly, Mr. Frederick, and this is really just repeating the Chief Justice's question, you have put off the table you're not defending the Second Circuit's position, which is that there is no statement, however capaciously or narrowly defined, there's no statement that needs to be alleged becomes misleading because of the omission. That's not correct, Justice Kagan. What the Stratt-McClure Court said and held was that the omissions rendered the financial statement misleading. And so the Second Circuit has viewed the categorical position that the government does as the correct ruling on the statement. Well, let's just imagine that the Second Circuit said something else, which is that any omission counts without having to show that it rendered any other statement misleading. You would reject that. I don't think that anybody, any Court has ever held that. We're not arguing that. The Second Circuit didn't hold that. It would be purely hypothetical. So what everybody is arguing about is just sort of how narrow or how capacious we should understand the requirement that there needs to be another statement that's rendered misleading. I think that's basically right in terms of framing the battlefield here, Justice Kagan. And that's why the subject is what is so important. They're willing to concede that there can be half-truths when there are omissions on the same subject, but they never really make clear what is the subject in the context of a public filing by a public company to a public agency charged with administering particular rules designed to protect investors. Can we just say that an omission alone is not good enough? You have to say that. I don't think that's going to help anyone, Justice Kavanaugh, frankly, for this reason. Help us. And I appreciate my role is to help you, Justice Kavanaugh. But in the furtherance of helping the bar, let me urge you to say that the omission has to be tied to the particular statements at issue, which are here the MD&A, the management discussion. That has to be the subject in which you look at omissions and statements. It's the only administrable rule where you look at what is required under the item 303 rule and you determine whether the company complied with it. Say the MD&A as a whole is misleading, really kind of waters down the statement requirement. At least that's the argument on the other side. It is. And that's why we made the backup argument that if charged with looking at particular statements in the MD&A, we pleaded that, we can do that, we can establish that. But I think, Justice Kavanaugh, what's important is that when there are material omissions of the type and size and scope here, it's really important to have a tool to be able to say we're not going to flyspeck every sentence and the placement of every comma. This company didn't disclose what was going to happen to 40% of their business. Well, Mr. Frederick, if there's such agreement that a statement is required and, in fact, you seem to be okay with your friend Ms. Coberly's suggestion that it has to be a specific statement in a specific context, why not send it back for analysis under that standard? Certainly a remand is going to happen anyway because of the existence of the rudder. Would that help the bar? I don't know that, well, what I would like to urge the court is that when an omission is evaluated in the context of a misleading statement, the test for determining it in an item 303 context is, is it the subject covered by the item 303 requirement? I understand that's your first argument, but you seem to be content with a more specific level of analysis, too, and your friend on the bar by the PSLRA. Well And if you're content with it and she's content with it and you say it would be helpful for us to go beyond talking about omissions, why shouldn't we go ahead and do that? Because I think the government's position is the more categorical one, which we defend as well, and we believe that is correct for multiple reasons. The PSLRA doesn't require individual sentences. It requires statements, statements But if lower courts have uniformly, Ms. Koberly suggests, understood it at a lower level of specificity than that, why shouldn't, if you were asking for help for the bar, why wouldn't it be helpful for the bar to affirm what lower courts have done? Well, I think she's misstated the law. The Second Circuit is the financial statement and the MD&A is the important narrative discussion in the financial statement. So to the extent that she's talking about other courts, the only other court that's addressed the question presented directly is the Ninth Circuit, which has held categorically that no item 303 violation can give rise to a 10B5 No, but we're talking about 10B5 generally. We're now moving past the 303 issue, as I understand it, and talking about what it takes to plead a 10B5B case generally. Well And as Ms. Koberly suggests, at least, and what I've read seems to me that the level of specificity is lower than just saying go look at a long document like a legal brief. Well, Justice Gorsuch, I don't want to fight your instinct to ratify But if you're looking for guidance, and that's correct and useful guidance, or do you want us just to go ahead and answer the narrow question presented about omissions? I'm just I think that the problem with getting too high a level of specificity is that it misses the very hypothetical that the Chief started the argument with, where the company oversells the fact that 30% of its revenue come from a customer that, say, doubles its order, but it doesn't talk about the parts supplier that's about to go into bankruptcy that would affect 30%. But that might be specific. I mean, we're going to have to argue about that, but that's, I think, what lower courts do all the time and say is that specific enough? Is that more like the crossroads example that you both have used? Or is it too far flung to qualify as a statement on that subject matter? And that's why the item 303 framework is a better one than a free-floating same-subject test, which is the other side's offer. But you can see that elsewhere in securities law, it is more specificity, and that courts do require a more specific level of granularity than just say it's required somewhere in a regulation. Yes, but that is usually in the context of earnings calls, press releases, voluntary statements in which the company is not required to make disclosures. Sorry. I guess that's my problem, Mr. Frederick, because to the extent that that historical view reduces to whenever the company is required to make statements, not doing so renders the report misleading. I guess I don't understand how that's any different than just saying pure omissions in a context in which there's a regulation that requires you to disclose count. It seems to me it writes out of the statute something about the statement being rendered misleading to interpret that to mean any time you are required to disclose certain information in a statement and it isn't there, you have a misleading statement. But, Justice Jackson, the part of the statute that they don't really want to talk about is the part that says in the light of the circumstances under which they were made. The circumstances here are the regulation requiring disclosure on specific topics. No, I understand that, but the Chief Justice asked the very question that I was going to ask, which is what is the difference between a pure omission in a world in which you are required to make a disclosure and an omission that renders a statement misleading? And if you do it at a certain level of generality, I see that there is no difference between those two. And I think there is no difference except in the small. That is a pure omission. It is as pure as you can be that you have violated the rule by simply not complying with it. Now, I'm told that never happens in the real world, but that's why this whole pure omission thing is a canard for really not capturing what is going on in a securities action, which are a series of half-truths. Here, the difference is that between the voluntary scenario where you do have to have more specificity about the misleading omissions and statements, where you're under a regulatory regime that requires certain disclosures and certain managers' analyses, you have to follow the regulation. And the regulation here calls for this disclosure. Now, Justice Jackson, to be sure, not all of those misleading statements or omissions are going to give rise to 10b-5 claims. You have to pre-plead materiality. Why is there a difference in 10b and Section 11, then? In other words, how do you respond? It seems to me the Section 11 argument is what you're saying. When you're required to state something and you don't state it, Section 11 says there's liability. We have different language in 10b-5, so how do you account for that? Well, 10b-5 is intended to be more of a catch-all for a provision in which the SEC was intending to capture, by rule, all conceivable forms of fraud. Section 11 is a very specific rule capturing just the disclosures made in offering documents. Because once a stock is put on the market through an offering document, the offering document, all four corners are supposed to help the investor identify the worth of the offering. Once the offering is made, the market takes over, right? And so the specificity required is necessary because Section 11 is a strict liability offense. It does not involve say-enter. Fraud requires say-enter. And so having more particularity with respect to the offering document statements in that context makes economic sense and it makes governmental sense in the regard that what you're doing is holding the maker of those statements strictly liable for messing up by either by misleading in some way or omitting something that was stated. You don't do that in the fraud context because you're looking for broader concepts and language in which to enforce. And that's why the SEC, when it promulgated Rule 10b-5, looked to a different provision that did speak to the circumstances in which fraud could be conducted. Mr. Frederick, what about the question that we agreed to review? Now, you told us it was a worthless question in your brief in opposition, but wisely or not, we took the case to decide that question. And based on the argument this morning in your briefs, I don't really see a disagreement between you and Ms. Cumberley on the narrow question that the court agreed to take. I understand you to say that when there is a material omission in the 303, then a number of statements in the 303 can be regarded as misleading. And you need to say that, right, to get under 10b-5b. Is that correct? Well, we need that to get under 10b-5b. We do that multiple ways, either categorically, because the entire MD&A is false and misleading, or because the individual statements within it are false and misleading. All right, I'll follow up. Why don't you go ahead now? Well, the question is whether a failure to make a disclosure required under item 303 can support a private claim under Section 10b. I understand that to refer to 10b-5b. Quote, even in the absence of an otherwise misleading statement. And you're not arguing that, as I understand it. You're arguing that there are misleading statements in the 303, because it fails to state things that should have been stated. But the opacity of that last phrase that you highlighted, Justice Alito, is part of my argument. What is an otherwise misleading statement depends on context. The context here are the omissions. So you might look at a statement and say, that's not misleading except for the fraud and omissions that were material to render that particular statement otherwise misleading. So we argue on the question presented, the Second Circuit has never decided this on the basis of pure omissions. They decided in the context of misleading financial statements. And the otherwise misleading gets the half-truth theory into the case. Thank you, Counsel. Justice Thomas? Mr. Frederick, am I correct in assuming that the, you're just adding, you're saying it has to be a pure material omission? What I'm saying is that It seems to me as the only adjective you're adding is material. Material is necessary to make a 10b-5 claim, Justice Thomas. And so there also has to be seantor. So it has to be a pure material omission with seantor that also causes the other elements in order to give rise to a 10b-5 claim. We acknowledge that. Justice Jackson? Thank you, Counsel. Mr. McDowell? Thank you, Mr. Chief Justice, and may it please the Court. I want to just pick up on this idea that the petitioners are asking for a tight factual connection between the statement and the omission, but that ignores the context in which an MD&A is made. The context is item 303. Item 303 requires companies to disclose all information in a particular category. And when you have that sort of regulation, that's the subject matter in which you evaluate the statement and omission. So just to take the Cardozo case as an example, that case was a voluntary disclosure case. There was no disclosure regulation at issue. And in that circumstance, we agree that there will need to be some factual connection between the statement and the omission. But when you have a regulation like you have here, that's the way in which you evaluate the statement and omission. So just to take the facts of that case and vary them a bit, suppose there were a regulation in that case requiring sellers to disclose to buyers everything that could affect the material value of the property. In that circumstance, not disclosing a nearby factory would be misleading, even in a voluntary disclosure case, it might not be misleading and there would need to be a tight subject matter connection. I welcome the Court's questions. But aren't you too saying that as long as it's material, the omission is material, that it satisfied 10b-5b? No, Your Honor. We're saying that there has to be an item 303 violation, it has to be material under this Court's decision in basic, which is a different materiality standard than item 303 itself, and then there has to be scienter as well. So there are multiple different elements beyond just materiality. What I'm trying to get at is I'm trying to understand what's the difference between what you're saying and what Petitioner is saying. Petitioner seemed to suggest that an additional statement is required. You're saying, at least from what I'm hearing, that it has to be material. And I take it as a granted scienter, okay? But I don't see that that adds anything more other than it's a pure omission that is material. No, Your Honor, because we're saying that the statement here is the MD&A's narrative discussion and analysis as a whole, and when you have an omission that satisfies the item 303 standard, that renders that entire narrative misleading because... But I don't see how you could have an omission if you don't have the initial 303 statement. You do have the initial 303 statement. That's the MD&A. The MD&A is the statement in response... I understand that, but I don't... Anyway, I understand what you're saying. I don't know how you could even have the omission ab initio if you don't have the 303 statement, and it is from that statement that we're talking about the omission. The omission beyond... Nothing beyond that, a material omission from the 303 statement. Your Honor, our position is that if you have a material omission from the 303 statement, that would be... That could give rise to liability. And the reason for that is because reasonable investors will expect the MD&A to disclose all known trends or uncertainties. So when you omit one, then you're violating those reasonable investor expectations. Now, there's been some discussion about the specificity of the statement required here, but as my colleague suggested, the ordinary meaning of statement includes a narrative discussion and analysis... How can the MD&A as a whole be misleading but not any single statement within it? Your Honor, the MD&A as a whole is misleading because reasonable investors will assume that it is complete in light of item 303. There may also be individual statements that are specifically misleading, as my colleague suggested, but our position is the categorical one, that the entire MD&A is the statement and that's what's been rendered misleading by the omission. And won't that always mean, then, that an omission, item 303 omission, qualifies? Uh, no, Your Honor, because first of all, it has to meet the standards of item 303 itself, which requires that the trend or uncertainty be currently known, reasonably likely to occur, and reasonably likely to be material. Right, but once you have that... We also have to show materiality under BASIC, which is oftentimes a higher threshold, as well as CENTER. So we're just talking about one element of the Rule 10b-5 claim. But, yes, as to the misleading omission element, our position is that when there is an item 303 violation, that would satisfy that one element. And just to understand why we think the right way to think about the statement is the MD&A as a whole, I want to give you an example of a slightly more straightforward SEC disclosure regulation, which is item 401. That requires companies to list all the directors on the board of directors of the company. If a company omits one of those directors from the disclosure, that omission doesn't render misleading the identification of any other individual director, but it does render misleading the company's larger statement that this is our full board of directors. The same analysis applies here. Item 303 requires companies to disclose all material known trends or uncertainties. So if you omit one, that doesn't render the identification of any other one misleading, but it does render misleading the holistic statement that these are all the known trends or uncertainties affecting the company's financial data. I didn't see that, and I think Ms. Coberly agreed, but I guess I'm trying to figure out the difference between the language of 10b-5 with respect to this issue and Section 11. The government's position, it seems to me, renders those two the same in this context, because Section 11 says that you may sue when a regulated party has, quote, omitted to state a material fact required to be stated. And in this context, you're saying that to the extent that Item 303 requires these trends and uncertainties to be stated, if they are omitted, we should consider that to count or satisfy the additional language in Section 10b-5 that talks about you needing to have a misleading statement. With respect, Justice Jackson, that's not correct because Section 11 goes on to say or necessary to make the statements therein not misleading. So Section 11 speaks to both pure omissions and half-truths expressly. Right. And it's different than 10b, which doesn't have that first part. Correct? That's correct. But 10b does have the part that we are relying on primarily. No, I understand. But to the extent that 11 has two different things, right, the part I read required to be stated and the part that is similar to 10b-5, I don't understand you're collapsing the two and I feel like your argument is doing that. No, Your Honor. They're distinct categories. So a pure omission would occur, for instance, if a company did not file an MD&A at all or in the context of Section 11 if they omitted an entire category within a registration statement. By contrast, a half-truth is when you provide some disclosure under a particular category but omit other parts of the disclosure and that renders the entire statement within that category misleading. So that's the distinction here. And do you think the Second Circuit appreciated that distinction in its opinion? Because I sort of thought that they were saying the first. So, Your Honor, the Second Circuit's decision is unpublished and has fairly limited reasoning and I read it to basically cite and adopt the Second Circuit's precedential opinion on this issue which is Stratton-McClure. And Stratton-McClure does rely on, as I read it, a half-truths theory because it says that an item 303 violation renders the financial statement misleading which I take to mean the MDNA. And that's exactly our position. So I do think that the actual precedent within the Second Circuit does agree with our position and I don't think it would do any good to just say, to just basically say vacated remand and let them take another look because Stratton-McClure does decide this issue in the way that we think about it. The other point I wanted to make about the PSLRA's pleading standard is I think the other side is suggesting that that pleading standard can substantively limit the scope of subsection B of Rule 10b-5 but that gets the analysis backwards because if you look at the pleading standard and it's at page 11 of the addendum to the red brief, the pleading standard just tracks the language of subsection B of Rule 10b-5. It doesn't purport to change or restrict that language. So I would read the PSLRA's pleading standard in light of the long-standing provision of subsection B of Rule 10b-5 not the other way around. So the only question Do you agree with Ms. Coberly though that lower courts have understood the PLSRA to require a more specific statement identification than you're proposing here? No Justice Gorsuch not in this context because this No no no put aside the 303 context in all other contexts. As I understand it district courts have understood lower courts have understood generally that the PLSRA is more specific has a more specific nuanced requirement than you're proposing. In the context of voluntary disclosures yes and that's what I started with. I understand that distinction but you agree that outside this context that's the standard. Right but yes I agree with that And the government doesn't object to that standard in all other contexts. In the voluntary disclosure context we do not but that distinction is critical because when you have a regulation I do understand that I just want to clarify thank you yes and that distinction is critical because when you have a regulation like this calling for all information in a particular category the omission of information in that category will necessarily be misleading and just to take a step back and put the MDNA in context it's part of a Form 10-K and a Form 10-K document really is like a question and answer document with discrete categories and as with any Q&A document you can only understand and answer in light of the question being asked so just to take it into a different context suppose a company CEO were on a phone call with an investor and the investor says what are all the big trends coming up for the next year may I complete the sentence you may complete the sentence the investor asks what are all the big trends coming up for the next year if the CEO responded by listing five positive trends but omitting a negative trend I think we would all agree that we don't want to get any further into the business of applying private rights of action and here it seems to me that at least as presented this is a question of whether or not we extend the existing private right of action to cover 303 omissions I'm talking about the private actions of course why isn't that something that should cause us to be reluctant to apply   of action to 303 but in Halliburton there was an established element of reliance and the court said that you can point to a different way of dealing   issue and I think that this is a question of whether or not we extend the existing private right of action to cover 303 but in Halliburton the basic presumption of reliance fits within the long settled element of reliance I think petitioners are over reading this court's decisions in stone ridge and Janice we read the same question I asked Mr. Frederick what's your answer to the question on which we granted review you changed the question what's the answer to the question we have  two million question right and I read  misleading to be misleading by its own terms we're saying it doesn't have to be mislead in the context of item 303 which is the relevant statement there's nothing atypical about reading statement there's an otherwise misleading statement which is part of the question with respect Justice Alito I don't think it has   misleading in the     which is the relevant statement there's nothing atypical about reading statement there's an otherwise misleading statement which is part of the question          misleading in the context of item 303 which is the relevant statement there's nothing atypical about reading statement there's no misleading in the context of item 303   the relevant statement there's no misleading in the context of item 303 which is a   is a relevant statement there's no misleading in the context of item 303 which is a relevant statement there's no misleading in   of  303 which is a